UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS – EAST ST. LOUIS

| | | |
|---|---|---|
| LEROICA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. : |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS | ) | |
| | ) | |
| Serve: | ) | |
| Rob Jeffreys, Director of Illinois Department | ) | |
| Of Corrections | ) | |
| 1301 Concordia Court | ) | |
| Springfield, IL 62794 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WARDEN RON VITALE, individually | ) | |
| and in his official capacity, | ) | |
| | ) | |
| Serve at: | ) | |
| Southwestern Illinois Correctional Center | ) | |
| 950 N. Kingshighway | ) | |
| East St. Louis, IL 62204 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WARDEN SHARLETTE RODGERS, | ) | |
| individually and in her official capacity, | ) | |
| | ) | |
| Serve at: | ) | |
| Southwestern Illinois Correctional Center | ) | |
| 950 N. Kingshighway | ) | |
| East St. Louis, IL 62204 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SERGEANT DWAYNE ELLIOTT, | ) | |
| individually and in his official capacity, | ) | |
| | ) | |
| Serve at: | ) | |
| Southwestern Illinois Correctional Center | ) | |
| 950 N. Kingshighway | ) | |

1

East St. Louis, IL 62204         )
                                  )
        Defendants.        )       JURY TRIAL REQUESTED

## **COMPLAINT**

COMES NOW Plaintiff Leroica Brown, by and through her attorneys, and for her Complaint against the State of Illinois Department of Corrections ("Defendant IDOC"), Warden Ron Vitale ("Defendant Vitale"), individually and in his official capacity, Warden Sharlette Rodgers ("Defendant Rodgers"), individually and in her official capacity, and Sergeant Dwayne Elliott ("Defendant Elliott") individually and in his official capacity, states as follows:

## **Introduction**

1.     This matter arises under Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e, *et. seq.*, the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), *et. seq.,* the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101, *et. seq.*, and the Fourteenth Amendment of the Constitution of the United States. Plaintiff worked as a Correctional Officer for Defendant IDOC at the Southwestern Illinois Correctional Center. During Plaintiff's employment, Defendant Elliott subjected Plaintiff to sexual harassment so severe and pervasive as to create a hostile work environment. When Plaintiff complained of the sexual harassment, Defendants retaliated against Plaintiff with unwarranted discipline and harassment. Defendant IDOC, Defendant Vitale, and Defendant Rodgers subjected Plaintiff to additional discrimination when she became pregnant. Defendants' ongoing harassment, discrimination, and retaliation forced Plaintiff's constructive discharge from her employment.

## **Jurisdiction and Venue**

2.     Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331 and 1343(a) and 42 U.S.C. § 2000e-5 to hear and decide claims under federal law. Plaintiff invokes supplemental

jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and decide Plaintiff's claims under Illinois state law.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 42 U.S.C. § 2000e-5(f)(1)(B)(3) because all events giving rise to this action occurred within the Southern District of Illinois – East St. Louis.

4.      On or about July 29, 2020, Plaintiff cross-filed a charge against Defendant IDOC with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") alleging sexual harassment, discrimination, and retaliation.

5.      On or about November 30, 2020, Plaintiff cross-filed an amended charge against Defendant IDOC with the EEOC and the IDHR further alleging sexual harassment, discrimination, and retaliation.

6.      On or about September 13, 2021, Plaintiff cross-filed an additional charge against Defendant IDOC with the EEOC and the IDHR further alleging sexual harassment, discrimination, and retaliation.

7.      Plaintiff received notices of Right to Sue for the charges from the EEOC on January 10, 2022 and January 13, 2022.

8.      Plaintiff received notices of Right to Sue for the charges from the IDHR on December 8, 2021 and January 26, 2022.

9.      This action is timely filed. Plaintiff has complied fully with the administrative exhaustion requirements of Title VII and the Illinois Human Rights Act.

## Parties

10.     Plaintiff Leroica Brown is a female citizen and resides in St. Clair County, Illinois. Plaintiff was pregnant from March of 2019 until she delivered her daughter in October 2019.

11.     Defendant IDOC is an Illinois State Agency created pursuant to the Unified Code of Corrections, 730 ILCS 5 (2021) for the purpose of accepting into its care persons committed to it by Illinois State Courts due to actions in violation of Illinois Criminal Statutes for care, custody, treatment, and rehabilitation. Defendant IDOC has the capacity to sue and be sued.

12.     Defendant Dwayne Elliott is an employee and agent of Defendant IDOC. From January 2020 forward, Defendant Elliott was a Sergeant at the Southwestern Illinois Correctional Center ("SWICC"). At all relevant times, Defendant Elliott had supervisory authority over Plaintiff. At all relevant times, Defendant Elliot acted under color of law and within the scope of his employment as a Sergeant. He is being sued in his individual and official capacity.

13.     Defendant Warden Ron Vitale was an employee and agent of Defendant IDOC at all relevant times until December 31, 2019. Defendant Vitale oversaw SWICC and was Plaintiff's highest-ranking supervisor. At all relevant times, Defendant Vitale acted under color of law and within the scope of his employment as Warden for Defendant IDOC. He is being sued in his individual and official capacity.

14.     Defendant Warden Sharlette Rodgers is an employee and agent of Defendant IDOC. At all times relevant to this cause of action, Defendant was first Assistant Warden at SWICC then became Warden on January 1, 2020. As Warden, Defendant Rodgers oversaw SWICC and was Plaintiff's highest-ranking supervisor. At all relevant times, Defendant Rodgers acted under color of law and within the scope of her employment as Warden for Defendant IDOC. She is being sued in her individual and official capacity.

### Statement of Facts Common to All Counts

15.     Plaintiff Leroica Brown is a female citizen and resides in St. Clair County, Illinois.

16.     SWICC is a state-run correctional facility existing under Defendant the Illinois State Department of Corrections, located at 950 N. Kingshighway, East St. Louis, Illinois 62204. Many of the Defendants' actions alleged herein occurred at SWICC.

17.     Defendant IDOC offered Plaintiff a full-time Correctional Officer position in March 2018.

18.     After undergoing extensive training, Plaintiff began working for Defendant IDOC as a Correctional Officer at SWICC in August 2018. Plaintiff's job duties included monitoring and keeping the inmates and facility secure.

19.     During her employment, Plaintiff performed her job duties and responsibilities in a satisfactory manner.

*Defendant Elliott's Harassment of Plaintiff*

20.     Plaintiff met Defendant Elliott in about 2017 when they were both students at Southwest Illinois Community College.

21.     Defendant Elliott was already an employee of Defendant IDOC and offered to help Plaintiff get a job there.

22.     In or about early 2018, Plaintiff applied for a job with Defendant IDOC. Defendant Elliott helped Plaintiff complete her application.

23.     On information and belief, Defendant IDOC removed Plaintiff's name from its hiring list for the position she had applied for, and Defendant Elliott arranged to place Plaintiff's name back on the list.

24.     Defendant Elliott asked Plaintiff for a kiss to "pay him back" for helping her get back on the hiring list. Defendant Elliott told Plaintiff he would make sure she got the job if she kissed him.

5

25.     Plaintiff felt very uncomfortable but complied and kissed Defendant Elliott.

26.     In about March 2018, Defendant IDOC offered Plaintiff a job as a full time Correctional Officer.

27.     Defendant Elliott told Plaintiff that he had spoken with a "friend" at Defendant IDOC to make sure that she was the next person hired. Defendant Elliott told Plaintiff that he had "access to a lot of things" and a lot of people working under him "kept him informed."

28.     In or about March/April 2018, Defendant Elliott e-mailed Plaintiff that he was starting to "develop feelings for her." Plaintiff responded that she was happy with her partner and not interested in a romantic relationship with Defendant Elliott. Defendant Elliott then e-mailed Plaintiff stating that he knew Plaintiff's partner "was not making her happy." Plaintiff reiterated that she was happy.

29.     In or about early June 2018, Defendant Elliott e-mailed Plaintiff stating he wanted to "suck her vagina dry so bad."

30.     Plaintiff then blocked Defendant Elliott's phone number on her phone.

31.     On June 5, 2018, Plaintiff started a six week training at the Police Academy for her new position as a Correctional Officer with Defendant IDOC.

32.     On information and belief, Defendant Elliott told Shannon Edley, who worked in the front office for the Academy, to "keep an eye" on Plaintiff because Plaintiff "was his girl."

33.     In about Plaintiff's second week of training, Defendant Elliott left a note on Plaintiff's car stating, "I wish I could see you. I can't get you off my mind." Plaintiff called Defendant Elliott, and he admitted he left the note on her car.

34.     Defendant Elliott asked Plaintiff if he could see her. Plaintiff declined and asked Defendant Elliott not to leave notes on her car.

6

35.     Later in June 2018, Plaintiff received a note on her car at her home stating, "I hope you are hanging in there with the academy, only a few short weeks left" with a smiley face.

36.     In or about June 2018, Plaintiff blocked Defendant Elliott's number on her phone.

37.     In July of 2018, Defendant Elliott e-mailed Plaintiff that he wanted to come to her Police Academy graduation ceremony and was bringing her a gift. Plaintiff responded asking Defendant Elliott not to come to her graduation, and stating that she did not want the gift. Defendant Elliott replied that he did not understand why she did not want him to attend when "he had helped her get so far ahead."

38.     In August of 2018, Plaintiff began working for Defendant IDOC at SWICC as a Probationary Correctional Officer.

39.     Defendant Elliott continued to e-mail Plaintiff after her training was complete. Plaintiff stopped responding and tried to avoid Defendant Elliott.

40.     Plaintiff changed her phone number so that Defendant Elliott could not contact her.

41.     After Plaintiff began working at SWICC, Plaintiff's fiancé received phone calls for three days in a row with a male voice stating Plaintiff was having sex with her co-workers at her new job.

42.     After Plaintiff began working at SWICC, Plaintiff's mother began to receive phone calls where someone would breathe into the phone then hang up.

43.     In or about August 2018, Defendant Elliott approached Plaintiff at SWICC and told Plaintiff he was having sexual dreams involving her. Defendant Elliott told Plaintiff he was imagining Plaintiff "in a sexual way" and wanted to "kiss and lick on her."

44.     When Plaintiff stopped responding to Defendant Elliott's messages, Defendant Elliott called her an "ungrateful bitch" at work and stated he was the "only reason she had a job."

45.     On information and belief, Defendant Elliott told two of Plaintiff's coworkers, Shannon Edley and Eric Gunter, that Defendant IDOC had only hired Plaintiff because of him.

46.     On information and belief, Defendant Elliott told Plaintiff's supervisors and/or co-workers that Plaintiff was trying to have sex with him.

47.     On more than one occasion in or about September 2018, Plaintiff saw Defendant Elliott in the parking lot of the apartment complex where Plaintiff lived. Defendant Elliott sat on his motorcycle playing loud music. Defendant Elliott also left another note on Plainitff's car in the parking lot stating that he missed her.

48.     The next time Plaintiff saw Defendant Elliott at work, Plaintiff asked him how he knew where she lived, and he told her he "had his resources." Then Defendant Elliott told Plaintiff that he "helped her get her job" at SWICC and he could just as easily take the job away from her. Plaintiff then blocked Defendant Elliott's e-mail so that he could not contact her by e-mail.

49.     Defendant Elliott repeatedly told Plaintiff that he was the reason she had a job, and that she "owed him." Defendant Elliott indicated that he expected Plaintiff to have a sexual relationship with him to "pay him back" for helping her get her job.

*Plaintiff Reports Sexual Harassment*

50.     On or about September 22, 2018, Plaintiff reported Defendant Elliott's inappropriate conduct to Major Angela Harlan, a supervisor. Harlan advised Plaintiff to report the harassment to Defendant Vitale.

51.     Plaintiff understood that any complaint she made would be sent to Major Christopher Marshall as the head of internal affairs.

52.     On information and belief, Marshall was friends with Defendant Elliot and considered him a "brother" because they had both served in the Marines. Plaintiff included concern about Marshall's friendship with Defendant Elliott in her written complaint.

53.     Plaintiff asked Harlan to send her complaint directly to Defendant Vitale.

54.     On information and belief, Defendant Vitale sent Plaintiff's complaint to Marshall for investigation.

55.     On information and belief, Marshall soon thereafter informed Defendant Elliott about the complaint.

56.     On information and belief, Marshall took no actions to investigate Plaintiff's complaint.

57.     Defendant Vitale also assigned Tamara Brown, from the State of Illinois Office of Affirmative Action, to assist Marshall in the investigation of Plaintiff's complaint.

58.     Brown informed Plaintiff that under Defendant IDOC's policies and procedures, Defendant Elliott would not be able to work near or with Plaintiff during the investigation.

59.     Defendant IDOC continued to schedule Plaintiff to work during the same shifts and in the same areas as Defendant Elliott.

60.     On or about September 29, 2018, Defendant Elliott told a coworker that his "brother" told him someone had filed a sexual harassment complaint against him, and his "brother" also told him "not to worry about it."

61.     On information and belief, Defendant IDOC never properly investigated Plaintiff's September 2018 complaint.

62.     Defendant IDOC took no remedial actions to prevent or correct Defendant Elliott's inappropriate conduct toward Plaintiff.

63.    Plaintiff never received any official results or conclusions of any investigation into her September 2018 complaint.

***Retaliatory actions against Plaintiff by Defendants***

64.    On or about October 1, 2018, Plaintiff's supervisor Major Cassandra Davis gave Plaintiff permission to go to her car to make a personal call to check on her daughter who was sick.

65.    As Plaintiff returned to her post, Sergeant Nicholas Sroka, a higher-ranking officer than Plaintiff, accused Plaintiff of abandoning her post. When Plaintiff explained the situation, Sroka yelled, "I don't care about your kid. You people are always stealing time. I don't give a fuck about your kid," and threw a set of keys at Plaintiff.

66.    On information and belief, Sroka never yelled or threw items at officers who did not complain of sexual harassment.

67.    Plaintiff reported Sroka's behavior to Davis. Davis tried to discourage Plaintiff from making a complaint and told Plaintiff to "get a backbone." Plaintiff filed an incident report anyway and tried to change shifts to avoid Defendant Elliott, Marshall, and Sroka.

68.    On or about October 4, 2018, Plaintiff asked permission from Major Clark to go for a walk during her break. Clark rolled his eyes at Plaintiff and stated that she could "if she felt safe" doing so. Clark told Plaintiff that Defendant Elliott could come outside at any time, and she might see him.

69.    On or about October 21, 2018, took a break at work when Sroka was staffing the door. Plaintiff buzzed several times before Sroka would let her out. Before he opened the door, Sroka flipped Plaintiff off, a hand gesture meaning "Fuck off." Sroka did this in front of another co-worker. Sroka and the other co-worker laughed as Plaintiff left to take her break.

70.     On or about October 21, 2018, Plaintiff learned that when her fiancé called the facility to contact her that day, workers at SWICC repeatedly disconnected the phone.

71.     On or about October 22, 2018, Major Ronald McDonald falsely accused Plaintiff of lying about Sroka's behavior and of violating policies and procedures by not directly reporting the incident to him and bypassing the chain of command.

72.     In or about November 2018, Plaintiff transferred to the 3:00-11:00 PM shift.

73.     After Plaintiff's transfer to a different shift, one or more coworkers told her that her new supervisor McDonald said he was going to try to get Plaintiff fired.

74.     On November 21, 2018, Plaintiff injured her back while assisting Officer Ferguson, who had fallen.

75.     Plaintiff informed McDonald of her injury, but McDonald refused to acknowledge or respond to her.

76.     Plaintiff also informed Harlan of her injury.

77.     Plaintiff planned to seek medical treatment for her injury after her shift.

78.     McDonald did not provide Plaintiff with any assistance transporting or dealing with inmates that day.

79.     McDonald asked Plaintiff to stay late and work that night even though he was aware of Plaintiff's injury and intent to seek medical attention.

80.     When Plaintiff informed McDonald that she could not stay late that evening because of her medical appointment, McDonald yelled at Plaintiff in front of Plaintiff's co-workers and asked her "who she thought she was."

81.     Plaintiff was embarrassed and humiliated.

11

82.     Harlan informed Plaintiff that she needed to complete workman's compensation paperwork regarding the injury. McDonald never informed Plaintiff she needed to complete such paperwork.

83.     Plaintiff saw her medical provider on or about November 21, 2018. Plaintiff and her medical provider completed and submitted the workman's compensation paperwork to McDonald.

84.     McDonald refused to sign off on the paperwork documenting Plaintiff's back injury, so she would be excused from work.

85.     McDonald claimed he heard from another officer that Plaintiff was faking her injury. Plaintiff informed McDonald that Officer Ferguson witnessed her injury.

86.     In November 2019, McDonald disciplined Plaintiff for not providing a workman's compensation report following her injury.

87.     On information and belief, McDonald asked another officer to submit a false report that Plaintiff was fine after helping Officer Ferguson up.

88.     On information and belief, on or about December 12, 2018, McDonald pressured McQuarrie and Harlan to discipline Plaintiff for not following the chain of command by supposedly failing to inform McDonald of her injury and for not immediately completing workmans compensation paperwork before seeking medical treatment.

89.     On or about January 29, 2019, McDonald gave Plaintiff a poor performance review and requested that Plaintiff's probationary period be extended.

90.     Plaintiff successfully grieved and disputed the false performance review, and her probationary period was not extended.

*Harassment of Plaintiff after Plaintiff becomes pregnant*

91.     In March of 2019, Plaintiff learned she was pregnant. She planned to begin her maternity leave on October 23, 2019.

92.     Plaintiff's pregnancy was considered "high-risk."

93.     In or about April 2019, Plaintiff notified Defendant Vitale and her supervisors of her pregnancy.

94.     On information and belief, Defendant IDOC had a practice of reassigning officers from the housing unit and other dangerous posts to light duty positions that were less dangerous and physically demanding.

95.     Plaintiff asked Defendant IDOC to move her to a light duty position as well.

96.     McDonald and Defendant Vitale told Plaintiff she was required to provide "proof of pregnancy" before she could move to a light duty position.

97.     On information and belief, Defendant IDOC did not require other pregnant officers to provide proof of their pregnancy before moving them to safer positions.

98.     In or about May 2019, Plaintiff obtained documentation of her pregnancy and a list of recommended restrictions from her obstetrician. Plaintiff's obstetrician recommended that Plaintiff work in an air-conditioned environment, limit work to eight hours per day, not lift more than 20 pounds, take breaks to sit, and have easy access to a bathroom at all times.

99.     Plaintiff provided the documentation and list of recommended restrictions to Marshall, Defendant Vitale, and Union President Mr. Shiffendecker.

100.    Defendant Vitale told Plaintiff that the documentation she provided was "not good enough" to warrant her being placed in a less dangerous light duty position. Warden Vitale

demanded that Plaintiff fill out a form asking for reasonable accommodation due to her pregnancy before he would consider her request.

101.    On or about May 16, 2019, Plaintiff completed and submitted the additional form requesting a light duty position that would accommodate the list of restrictions ordered by her doctor.

102.    On information and belief, Defendant IDOC did not require other pregnant employees to complete a form requesting a light duty accommodation for pregnancy.

103.    Defendant Vitale approved Plaintiff's request for accommodation but did not notify Plaintiff or McDonald of his approval. Plaintiff learned of the approval about two weeks after the approval when she followed up about her request.

104.    Defendant IDOC still did not provide Plaintiff with any of the approved accommodations she requested due to her pregnancy.

105.    Plaintiff's supervisors continued to require Plaintiff to work in more dangerous areas where she would have to pat down inmates.

106.    During one of these pat downs, an inmate threatened to kick Plaintiff in the back. When Plaintiff reported the inmate's threat, McDonald laughed and continued to require Plaintiff to perform inmate pat-downs.

107.    Plaintiff's supervisors refused to allow Plaintiff to use the restroom unless Plaintiff's coworkers could relieve her of her post.

108.    Eventually, Plaintiff grew so large from her pregnancy that she was unable to fit into her uniform pants. Plaintiff went to the uniform department at SWICC and asked for larger pants to accommodate her pregnancy, but there were no larger sized pants available. Plaintiff then

learned that other female officers who had been pregnant had worn scrub pants when they could not fit the uniform pants. Plaintiff purchased her own scrub pants to wear as part of her uniform.

109.    In or about Summer of 2019, while Plaintiff was wearing the scrub pants, Marshall angrily asked Plaintiff, "What do you think you are wearing?" in front of her co-workers. Plaintiff informed him that the uniform department did not have larger pants to accommodate her pregnancy. Marshall yelled that Plaintiff was out of uniform and ordered her not to wear the scrub pants to work.

110.    Plaintiff was embarrassed and humiliated. Thereafter, Plaintiff had to wear her uniform pants unfastened and rolled down under her stomach.

111.    On or about October 16, 2019, Defendant Elliott winked and smiled at Plaintiff.

112.    In or about October 2019, shortly before Plaintiff started her maternity leave, Defendant Elliott called Plaintiff at work and told her that she was "still his girl."

113.    Plaintiff reported Defendant Elliott's call to her shift commander Major Kevin McQuarrie. Plaintiff then took her maternity leave.

114.    Due to stress and anxiety Defendant IDOC caused, Plaintiff decided to start her maternity leave two days before it was originally scheduled.

115.    After Plaintiff had her baby and was in the hospital, SWICC's Human Resources department notified her that they would not allow her to start her medical leave under the Family Medical Leave Act (FMLA) two days earlier than planned without added documentation. Plaintiff obtained this documentation, and Plaintiff's mother left the paperwork at the gatehouse at SWICC.

116.    After her maternity leave, Plaintiff complained to her Union Representative, the Union Vice President, and Harlan about Defendants failure to accommodate Plaintiff's pregnancy and the abuse and retaliation directed at her due to her pregnancy.

15

117.    Defendants took no remedial action in response to Plaintiff's complaints.

118.    Plaintiff's non-pregnant male co-workers were not threatened with discipline when they took FMLA leave or needed light duty accommodations or different sized uniforms.

***Harassment and retaliation after Plaintiff returned from maternity leave***

119.    When Plaintiff returned from her maternity leave, Plaintiff's supervisors continued to schedule Plaintiff to work in areas close to Defendant Elliott.

120.    In or about January 2020, after Plaintiff returned from maternity leave, Human Resources at SWICC accused Plaintiff of not providing the paperwork for the first two days of her medical leave and threatened to discipline Plaintiff for taking that time off.

121.    Plaintiff again provided the paperwork.

122.    In or about late 2019, Defendant IDOC promoted Defendant Elliott to the rank of Sergeant, which made him a higher-ranking officer than Plaintiff and a supervisor.

123.    On or about January 5, 2020, Plaintiff spoke to the new Warden, Defendant Rodgers, about her complaints of sexual harassment, discrimination, and retaliation.

124.    Defendant Rodgers suggested that Plaintiff find another job in another state agency.

125.    Defendant Rodgers told Plaintiff that her complaints of sexual harassment had been investigated and determined to be unfounded.

126.    Major Cassandra Davis was Plaintiff's supervisor Plaintiff she returned from maternity leave.

127.    When Plaintiff returned from her maternity leave, Davis assigned her to work with Defendant Elliott.

128.    On or about January 5, 2020, Plaintiff filed a complaint that Davis continued to schedule Plaintiff to work with Defendant Elliott.

129.    Defendant Rodgers refused to investigate Plaintiff's complaint or take any remedial action to prevent or stop the ongoing harassment, discrimination and retaliation directed at Plaintiff.

130.    On or about January 11, 2020, Plaintiff was going to be less than 10 minutes late to work. Plaintiff followed Defendant IDOC's protocols for reporting later to work and called Davis directly to report her late arrival.

131.    When Plaintiff arrived at work, Davis gave Plaintiff a verbal counseling for being approximately seven minutes late to work.

132.    On information and belief, Defendants did not discipline other employees for being less than 15 minutes late to work if they followed the proper call-in procedures.

133.    Plaintiff later asked Davis that same day if she could go during her scheduled lunch break to get something from her car. Davis yelled at Plaintiff and stated "y'all do whatever y'all want to on this shift anyway."

134.    On information and belief, Davis did not yell or belittle employees who had not made complaints of discrimination or harassment.

135.    Davis continued to regularly schedule Plaintiff to work in the same shifts and same areas as Defendant Elliott.

136.    Defendant Elliott regularly entered the housing unit during Plaintiff's shift and stared or leered at her.

137.    In about January 2020, Clark informed Plaintiff that employees could no longer go to their cars during their lunch breaks.

138.    Defendant IDOC then required Plaintiff to inform her shift commander McQuarrie each time she went to her car.

17

139.    Other officers were still permitted to go to their cars during their breaks without taking any extra steps.

140.    In or about January 2020, Davis told Defendant Elliott that he "had nothing to worry about with the sexual harassment case."

141.    In or about January 2020, Plaintiff reported to Tamara Brown with Affirmative Action that Davis was continuing to schedule Plaintiff to work the same shifts and areas as Defendant Elliott. Plaintiff also informed Brown of the conversation between Davis and Defendant Elliott regarding the sexual harassment complaint.

142.    On or about February 8, 2020, Lieutenant Zanger notified Plaintiff that her shift was changing and notified Plaintiff she would not be getting any of the future specific days off she had requested because someone with higher senority had already requested those days off.

143.    One or more other employees on Plaintiff's shift had lower seniority than her. Regular protocol required that necessary changes to shifts and days off affect employees with lower seniority.

144.    The shift change would have made it difficult for Plaintiff to obtain adequate childcare for her household.

145.    Zanger knew or should have known that Plaintiff had requested the particular days off to receive necessary training for required certification Defendant IDOC for her job.

146.    Plaintiff explained to Zanger that she needed the days off to complete her required training. Zanger told Plaintiff that she would discipline her for any further complaints if she did not accept the shift change and lost days off.

147.    Plaintiff then filed a grievance against Davis with Plaintiff's union president, and the matter was corrected.

148.   Davis continued to schedule Defendant Elliott to work the same shifts and areas as Plaintiff.

149.   Defendant Elliott continued to try to have contact and speak with Plaintiff almost daily. Plaintiff continued to try to avoid Defendant Elliott.

150.   On or about February 9, 2020, Plaintiff's 12-year-old daughter called Plaintiff at work to confirm how much medicine to give to Plaintiff's baby who was sick. Marshall answered the phone and yelled at Plaintiff's daughter for calling her mother at work.

151.   Marshall falsely accused Plaintiff of receiving five calls that day.

152.   Marshall told Plaintiff that all her personal calls had to go through him while she was at work.

153.   Marshall never required any other employees' personal phone calls to go through him.

154.   Plaintiff informed her union representative Officer Yowell of the incident with Marshall. Yowell advised Plaintiff to always have someone present during all of her interactions with her supervisors going forward.

155.   On or about February 12, 2020, Plaintiff had a family emergency and followed proper policies and procedures for reporting an emergency absence at work.

156.   Marshall gave Plaintiff written discipline for her emergency absence even though Plaintiff followed proper protocols.

157.   In about March 2020, Plaintiff began to have panic attacks due to Defendants' ongoing harassment and actions against her.

158.   On or about March 13, 2020, Plaintiff was diagnosed with anxiety due to stress from Defendants' ongoing harassment and actions.

159.    In or about March 2020, on information and belief, Marshall told inmates at SWICC to falsely accuse Plaintiff of flirting with them.

160.    On or about February 17, 2020, Plaintiff observed Davis and Sergeant Thompson discussing Plaintiff's sexual harassment complaints against Defendant Elliott.

161.    Plaintiff reported the breach of confidentiality of Plaintiff's sexual harassment complaints.

162.    On or about February 17, 2020, Union President Sergeant Cynthia Fields asked Plaintiff if she had considered withdrawing her complaints. Plaintiff declined to do so. Fields told Plaintiff that if she continued to complain, she would continue to experience harassment and retaliation at work.

163.    On or about February 23, 2020, Plaintiff reported a past incident in which her coworker Officer Myron Byas exposed himself to Plaintiff when they were working a shift together.

164.    Later in February 2020, Major McQuarrie informed Plaintiff that Defendant Rodgers had not received Plaintiff's February 2020 complaint or any of Plaintiff's prior complaints of sexual harassment, pregnancy discrimination or retaliation.

165.    Plaintiff gave McQuarrie a copy of all her complaints and incident reports to submit to Defendant Rodgers.

166.    Defendant Rodgers still took no actions to investigate or resolve Plaintiff's complaints.

167.    On information and belief, after McQuarrie provided copies of Plaintiff's complaints and reports to Defendant Rodgers, other Majors began to bully and harass him as well.

168.    In or about March 2020, on information and belief, Officer Rupper told coworker Officer Randolph to stay away from Plaintiff because "she was trouble." Plaintiff filed another incident report regarding that comment.

169.    On or about March 2, 2020, Plaintiff again discussed the hostile work environment with Union President Sgt. Fields. Sgt. Fields told Plaintiff to "wait it out" and advised Plaintiff to drop all of her complaints to make the harassment and retaliation stop.

***Plaintiff's constructive discharge***

170.    Defendants' actions were so severe and pervasive so as to interfere with Plaintiff's ability to perform her job duties.

171.    Defendants' actions were so severe and pervasive as to alter the terms and conditions of Plaintiff's job.

172.    In March of 2020, Plaintiff lost her childcare due to the Covid-19 pandemic. Plaintiff notified Defendant IDOC that she needed to take time off of work since she did not have childcare.

173.    Plaintiff tried to locate suitable childcare for her two children for months. During this search, Plaintiff used all her paid time off, and Defendant IDOC placed Plaintiff on unpaid leave.

174.    Plaintiff applied for food stamps for her family during the time she was on leave.

175.    In about May 2020, Plaintiff's Union President Sgt. Fields informed Plaintiff that if she did not return to work, she would be terminated. Plaintiff explained her difficulty in finding suitable childcare and her concerns about bringing the Covid-19 virus home to her children.

176.    On or about May 7, 2020, Plaintiff resigned her employment, effective June 1, 2020, due to the ongoing sexual harassment, discrimination, and retaliation she was suffering.

177.    Any reasonable person in Plaintiff's position would have resigned their position following Defendants' behavior and conduct.

178.    As a result of this constructive discharge Plaintiff has sustained lost wages and benefits associated with her employment.

179.    Defendants IDOC, Vitale, and Rodgers failed to properly investigate Plaintiff's complaints of sexual harassment, discrimination, and retaliation.

180.    Defendants IDOC, Vitale, and Rodgers failed to take any effective remedial actions when they learned of the harassment, discrimination, and retaliation against Plaintiff.

181.    On information and belief, other female officers have also suffered sexual harassment and/or retaliation in the past.

182.    On information and belief, Defendant IDOC failed to take effective remedial actions after the other female officers complained of sexual harassment and/or retaliation at SWICC.

**COUNT I**
**42 U.S.C. § 1983: Equal Protection**
**Against all Defendants**

183.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

184.    All Defendants denied Plaintiff equal protection of the law in violation of her rights under the Fourteenth Amendment of the Constitution of the United States by subjecting her to sexual harassment, sex discrimination, and pregnancy discrimination.

185.    The misconduct described in this Count was motivated by gender animus and constituted purposeful discrimination.

186.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

187.    The misconduct described in this Count was undertaken by Defendants Vitale, Rodgers and Elliott during the course and the scope of their employment and under color of law such that their employer, Defendant IDOC, is liable for their actions.

188.    The misconduct described in this Count was undertaken pursuant to the culture, policies and practices of the Defendant IDOC in the manner described more fully above.

189.    As a direct and proximate result of the discrimination from Defendants, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

**COUNT II**
**Title VII - Sex Discrimination**
**Against Defendant IDOC**

190.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

191.    Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f).

192.    Defendant IDOC is an employer as defined by 42 U.S.C. § 2000e(b).

193.    Defendants Vitale, Rodgers, and Elliott ranked higher than Palintiff by seniority and/or rank and had the power to take tangible employment actions against Plaintiff.

194.    Defendant Elliott subjected Plaintiff to vulgar, humiliating, severe and pervasive harassment based upon her gender throughout her employment.

195.    Other supervisors at SWICC also humiliated and harassed Plaintiff due to her gender during her employment.

196.    Plaintiff's supervisors took negative employment actions against her during her employment, including but not limited to verbal discipline, written discipline, attempted shift changes.

197.    Defendants IDOC was aware of the harassment and discrimination being directed at Plaintiff by her supervisors, co-workers, and other staff, including Defendant Elliott, but failed to take reasonable corrective measures to remedy the harassment and discrimination.

198.    Defendant IDOC harassed and took negative employment actions against Plaintiff because she refused to have a sexual relationship with Defendant Elliott.

199.    Defendant IDOC's actions were so severe and/or pervasive as to alter the terms and conditions of Plaintiff's employment.

200.    Defendant IDOC's actions were so severe and/or pervasive as to interfere with Plaintiff's ability to do her job.

201.    Defendant IDOC's actions created a hostile working environment for Plaintiff.

202.    Defendant IDOC engaged in intentional gender discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

203.    Any reasonable person in Plaintiff's position would resign due to Defendant's actions.

204.    Because of Defndant IDOC's actions, Plaintiff was constructively discharged from her employment, effective June 1, 2020.

205.    This misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

206.    As a direct and proximate result of Defendant IDOC's actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

<u>**COUNT III**</u>
**<u>Title VII and the Pregnancy Discrimination Act - Pregnancy Discrimination</u>**
**<u>Against Defendant IDOC</u>**

207.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

208.    Plaintiff was a pregnant person or affected by pregnancy as defined by 42 U.S.C. § 2000 e(k).

209.    At all relevant times, Plaintiff was an employee as defined by 42 U.S.C. § 2000e(f).

210.    Defendant IDOC is an employer as defined by 42 U.S.C. § 2000e(b).

211.    Defendant IDOC, through its supervisors, employees and agents, subjected Plaintiff to severe and pervasive harassment in the workplace while she was pregnant.

212.    Defendant IDOC, through its supervisors, employees and agents, took such actions because of Plaintiff's pregnancy.

213.    Defendant IDOC knew or should have known of the harassment and discrimination towards Plaintiff due to her pregnancy but failed to take any effective remedial actions to correct or prevent such harassment and discrimination.

214.    Defendant IDOC engaged in intentional gender and pregnancy discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

215.    This misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

216.    As a direct and proximate cause of Defendant IDOC's actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

### COUNT IV
### Title VII – Retaliation
### Against Defendant IDOC

217.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

218.    Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

219.    Defendant IDOC is an employer as defined by 42 U.S.C. § 2000e(b).

220.    Defendants Vitale and Rodgers and all Plaintiff's supervisors had the power to take tangible employment actions against Plaintiff.

221.    Plaintiff reported and/or complained of sexual harassment, sex discrimination, and pregnancy discrimination by Defendant Elliott and others at Defendant IDOC.

222.    Plaintiff's reports and complaints of sexual harassment and discrimination constituted protected activity.

223.    Defendant IDOC took adverse employment actions against Plaintiff because of her protected activity, in violation of 42 U.S.C. § 2000e-3(a).

224.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

225.    As a direct and proximate result of Defendant IDOC's actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

**COUNT V**
**Illinois Human Rights Act – Sex Discrimination**
**Against All Defendants**

226.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

227.    Defendant IDOC is an employer within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

228.    Defendants Vitale, Rodgers, and Elliott ranked higher than Palintiff by seniority and/or rank and had the power to take tangible employment actions against Plaintiff.

229.    Defendant Elliott subjected Plaintiff to vulgar, humiliating, severe and pervasive harassment based upon her gender throughout her employment.

230.    Defendant Elliott engaged in continuous unwanted, unwelcome sexual innuendos, comments, and advances toward Plaintiff during her employment.

231.    Other supervisors at SWICC also humiliated and harassed Plaintiff due to her gender during her employment.

232.    Defendants took negative employment actions against her during her employment, including but not limited to verbal discipline, written discipline, attempted shift changes.

233.    Defendants harassed and took negative employment actions against Plaintiff because she refused to have a sexual relationship with Defendant Elliott.

234.    Defendants' actions were so severe and/or pervasive as to alter the terms and conditions of Plaintiff's employment.

235.    Defendants' actions were so severe and/or pervasive as to interfere with Plaintiff's ability to do her job.

236.    Defendants' actions created a hostile working environment for Plaintiff in violation of the IHRA, 775 ILCS 5/2-102(D).

237.    Defendants were aware of the sexual misconduct and hostile work environment created by its employees and agents, including Defendant Elliott, but failed to take reasonable corrective measures, in violation of the IHRA, 775 ILCS 5/2-102(D).

238.    Any reasonable person in Plaintiff's position would resign due to Defendants' actions.

239.    Because of Defendants' actions, Plaintiff was constructively discharged from her employment, effective June 1, 2020.

240.    This misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

241.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

## COUNT VI
## Illinois Human Rights Act – Pregnancy Discrimination
## Against All Defendants

242.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

243.     Plaintiff was a pregnant person and/or affected by pregnancy as defined under 775 ILCS 5/1-103 (L-5).

244.     Defendants IDOC, Elliott, Vitale, and Rodgers, at all relevant times, were employers within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

245.     Defendants subjected Plaintiff to severe and pervasive harassment in the workplace while she was pregnant.

246.     Defendants subjected Plaintiff to such harassment and employment actions because of her pregnancy.

247.     Defendants' actions were so severe and/or pervasive as to alter the terms and conditions of Plaintiff's employment.

248.     Defendants' actions were so severe and/or pervasive as to interfere with Plaintiff's ability to do her job.

249.     Defendants' actions created a hostile working environment for Plaintiff in violation of the IHRA, 775 ILCS 5/2-102(D).

250.     Defendants were aware of the sexual misconduct and hostile work environment created by its employees and agents, including Defendant Elliott, but failed to take reasonable corrective measures, in violation of the IHRA, 775 ILCS 5/2-102(D).

251.     This misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

252.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

**COUNT VII**
**Illinois Human Rights Act – Retaliation**
**Against all Defendants**

253.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

254.    Defendants IDOC is an employer within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

255.    At all relevant times herein, Defendants Vitale and Rodgers were Plaintiff's supervisors.

256.    From September 26, 2018 until her constructive discharge, Plaintiff's supervisors scrutinized, and subjected her to unwarranted and unmerited disciplinary actions because of her complaints.

257.    As a supervisor Defendants Vitale and Rodgers and all Plaintiff's supervisors had the power to take tangible employment actions against Plaintiff.

258.    Defendants Vitale and Rodgers and all Plaintiff's supervisors had the power to take tangible employment actions against Plaintiff.

259.    Plaintiff reported and/or complained of sexual harassment, sex discrimination, and pregnancy discrimination by Defendant Elliott and others at Defendant IDOC.

260.    Plaintiff's reports and complaints of sexual harassment and discrimination constituted protected activity.

261.    Defendants took adverse employment actions against Plaintiff because of her protected activity, in violation of the IHRA, 775 ILCS 5/6-101(A).

262.    Defendants were aware of the retaliation occurring against Plaintiff, but failed to take reasonable corrective measures, in violation of the IHRA, 775 ILCS 5/2-102(D).

263.    Any reasonable person in Plaintiff's position would resign due to Defendants' actions.

264.    Because of Defendants' actions, Plaintiff was constructively discharged from her employment, effective June 1, 2020.

265.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

266.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

<u>**COUNT VIII**</u>
<u>**Illinois Human Rights Act – Disability Discrimination**</u>
<u>**Against All Defendants**</u>

267.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

268.    Defendant IDOC is an "employer" within the meaning of the Illinois Human Rights Act (IHRA).

269.    At all relevant times, Plaintiff was an employee within the meaning of the IHRA.

270.    From March 2019 to October 2019, Plaintiff had a disability within the meaning of the IHRA due to her high risk pregnancy.

271.    In or about April 2018, Plaintiff requested to work in less dangerous areas, considered "light duty work" because of her disability, a high-risk pregnancy.

272.    Moving Plaintiff to light duty positions would have been a reasonable accommodation.

273.    Defendants refused to provide a reasonable accommodation for Plaintiff's disability.

274.    Defendants instead disciplined and took negative employment action against Plaintiff because of her disability.

275.    Defendants engaged in malice or reckless indifference to Plaintiff's protected rights.

276.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

<u>**Count II**</u>
<u>**Americans with Disabilities Act**</u>
<u>**Against Defendant IDOC**</u>

277.    Plaintiff incorporates by reference the allegations contained in ¶¶ 1 through 182 as if fully set forth herein.

278.    Defendant is an "employer" and "covered entity" within the meaning of the Americans with Disabilities Act (ADA).

279.    From March 2019 to October 2019, Plaintiff was a "qualified person" and had a disability within the meaning of the ADA.

280.    In or about April 2018, Plaintiff requested to work in less dangerous areas, considered "light duty work" because of her disability, a high-risk pregnancy.

281.    Moving Plaintiff to light duty positions would have been a reasonable accommodation.

282.    Defendant IDOC failed to provide a reasonable accommodation for Plaintiff's disability, in violation of the ADA.

283.     Defendant IDOC instead disciplined and took negative employment action against Plaintiff because of her disability, in violation of the ADA.

284.     Defendant IDOC violated the ADA with malice or reckless indifference to Plaintiff's federally protected rights.

285.     As a direct and proximate result of Defendant IDOC's actions, Plaintiff has sustained lost wages, and other benefits of employment, emotional distress, such as pain and suffering, mental anguish and stress, inconvenience, humiliation, embarrassment, and loss of enjoyment of life.

## Conclusion

286.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant IDOC, Vitale, Rodgers, and Elliott awarding lost wages and benefits, reinstatement, front wages, emotional distress damages, compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and costs, and any other relief this Court deems may be just and proper.

## Jury Demand

287.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.


Respectfully submitted,

Kennedy Hunt Law, P. C.

 /s/ *Nicole Matlock*
**NICOLE MATLOCK, #66894MO**
**SARAH JANE HUNT #63899**
4500 West Pine Blvd.
St. Louis, MO 63108
(314) 872-9041 phone
(314) 872-9043 fax
nmatlock@kennedyhuntlaw. com
sarahjane@tkennedylaw. com

**ATTORNEYS FOR PLAINTIFF**

34