IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEROICA BROWN,<br><br>            Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, WARDEN RON VITALE, Individually, and in his Official Capacity, WARDEN SHARLETTE RODGERS, Individually, and in his Official Capacity, and SERGEANT DWAYNE ELLIOTT, Individually, and in his Official Capacity,<br><br>            Defendants. | Case No. 22-cv-00475-SPM |

# <u>MEMORANDUM AND ORDER</u>

Pending before the Court is a Motion to Dismiss First Amended Complaint filed by defendants Illinois Department of Corrections, Warden Ron Vitale ("Vitale"), Warden Sharlette Rodgers ("Rodgers"), and Sergeant Dwayne Elliott ("Elliott") (collectively, "defendants"). A supporting memorandum was filed contemporaneously with the motion (Doc. 21). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The facts alleged by Brown are accepted as true for purposes of defendants' motion[1]. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011). This Court will summarize what it deems necessary to address this motion.

---

[1] The factual information was taken directly from the complaint (Doc.1) and will be cited accordingly.

Leroica Brown is a female who was hired by defendant Illinois Department of Corrections ("IDOC"), the department of the Illinois state government that operates the prison system, as a correctional officer in March 2018 (Doc. 18, ¶¶ 10, 25). Following training, Brown began working at Southwestern Illinois Correctional Center ("SWICC"), one of the IDOC facilities, in August 2018 as a probational correctional officer (*Id.*, ¶¶ 29, 35).

Brown attended Southwestern Illinois College in 2017 with defendant, Sergeant Jeffrey Elliott ("Elliott"), who was employed by IDOC as a correctional officer at SWICC until his promotion to Sergeant in late 2019 (*Id.*, ¶¶ 20, 99). Defendant Ron Vitale ("Vitale"), was employed by IDOC and served as the warden at SWICC until December 31, 2019 (*Id.*, ¶ 13). Defendant Sharlette Rodgers ("Rodgers") was employed by IDOC and became warden at SWICC on January 1, 2020 (*Id.*, ¶ 14). Vitale, Elliott, and Rodgers all had supervisory authority over Brown at SWICC.

Elliott contacted plaintiff prior to her employment at SWICC and offered his assistance in her obtaining a job (¶¶ 20-23). Throughout her training, Elliott sent vulgar emails to Brown and left notes of her car (¶¶ 28-34). Once she began employment at SWICC, Brown stopped responding and tried to avoid Elliott (¶ 36). In September 2018, Brown first reported Elliott to a supervisor[2] at SWICC and believes Vitale was made aware of her complaints (*Id.*, ¶¶ 46-58). Following her complaint, Brown remained scheduled on the same shifts and in the same area as Elliott (*Id.*, ¶ 54).

Brown filed an incident report in October 2018 against a superior, Sergeant Nicholas Sroka (*Id.*, ¶ 54). Brown referenced numerous incidents that occurred in

---

[2] Brown claims she reported Elliott to Major Angela Harlan.

October 2018, including keys being thrown at her, an obscene hand gesture, phone disconnections, as well as accusations that she was lying and bypassing the chain of command (*Id.,* ¶¶ 60-65).

In November 2018, Brown was transferred to the 3:00 – 11:00 p.m. shift (*Id.,* ¶ 66). On November 21, 2018, Brown injured her back and later submitted the workman's compensation paperwork to Major Ronald McDonald (*Id.,* ¶¶ 67-73). Later that month, Brown was disciplined for not providing a workman's compensation report for her injury (*Id.,* ¶¶ 67-73).

On January 29, 2019, McDonald gave Brown a poor performance review and requested to extend her probationary period (*Id.,* ¶ 76). Brown filed a grievance disputing the poor performance review and her probationary period was not extended (*Id.,* ¶ 77).

In March 2019, Brown learned she was pregnant and planned to begin her maternity leave on October 23, 2019 (*Id.,* ¶ 78). In April 2019, Brown advised Vitale and her supervisors of her pregnancy, and requested to move to light duty in accordance with an IDOC practice of reassigning pregnant officers to less dangerous and physically demanding positions (*Id.,* ¶¶ 80-82). In May 2019, Brown provided proof of pregnancy, along with list of recommended restrictions to Vitale, Marshall, and the Union President Shifferdecker (*Id.,* ¶¶ 84, 85). Later in May 2019, Brown provided additional documentation to support her request for a reasonable accommodation of a light duty position (*Id.,* ¶¶ 86, 87). Although Vitale approved Brown's request for reasonable accommodation, she was not notified until she followed up with him (*Id.,* ¶ 88).

Notwithstanding the foregoing, IDOC did not provide her with the approved accommodations (*Id.,* ¶ 89).

In the summer of 2019, Brown began wearing scrub pants because she could no longer fit into her uniform pants and the uniform department did not have pants that could accommodate her pregnancy, but she was reprimanded for being out of uniform (*Id.,* ¶¶ 90, 91).

In October 2019, Brown received a phone call from Elliott that she reported to her shift commander, Major Kevin McQuarrie (*Id.*, ¶¶ 92, 93). Two days later, Brown began her maternity leave early (*Id.,* ¶ 94). After delivery but while still in the hospital, Brown was notified by SWICC's HR that she could not start her maternity leave early without additional documentation (*Id.,* ¶ 95). Brown's mother left the paperwork at the guardhouse at SWICC (*Id.*).

Brown complained to her union representative, the union vice president, and Harlan about IDOC's failure to accommodate her pregnancy, along with the abuse and retaliation directed against her (*Id.,* ¶ 96). While on maternity leave, Elliott was promoted to Sergeant, making him a higher-ranking officer (*Id.,* ¶ 99).

In January 2020, Brown returned to SWICC and was questioned by HR about not providing paperwork for the first two days of her medical leave and threatened with discipline (*Id.,* ¶ 98). When she returned from maternity leave, her supervisor was Major Cassandra Davis (*Id.,* ¶ 103). Davis assigned Brown to work with Elliott (*Id.,* ¶ 104).

On January 5, 2020, Brown advised Warden Rodgers of her prior complaints of sexual harassment, discrimination, and retaliation (*Id.,* ¶ 100). Brown was advised that

the complaints had been investigated and were unfounded (*Id.,* ¶ 102). Brown also filed a complaint that Davis continued to schedule her to work with Elliott (*Id.,* ¶ 105).

On January 11, 2020, Brown was verbally counselled for being approximately seven (7) minutes later to work (*Id.,* ¶ 107). That same month Brown reported to Tamara Brown with Affirmative Action that Davis continued to schedule her to work the same shifts and areas as Elliott (*Id.,* ¶ 115).

On February 8, 2020, Brown was notified that her shift was changing and that she would not be getting her requested days off because someone with higher seniority had requested them (*Id.,* ¶ 116). However, someone on her shift had lower seniority and protocol required that shift changes and days off affect employees with lower seniority (*Id.,* ¶ 117). Brown advised she needed the requested days to complete training and filed a grievance (*Id.,* ¶ 118, 119).

On February 9, 2020, Brown's daughter was admonished when she called her mother at work (*Id.,* ¶ 124). On February 12, 2020, Brown had a family emergency, and although she followed proper policies and protocol, she was disciplined (*Id.,* ¶¶ 125, 126). On February 17, 2020, Union President Sergeant Cynthia Fields asked plaintiff about withdrawing her complaints (*Id.,* ¶ 129). On February 23, 2020, Brown reported an incident when a male co-worker exposed himself (*Id.,* ¶ 130). That same month, Brown provided Major McQuarrie with copies of her prior complaints and requested they be given to Warden Rodgers (*Id.,* ¶¶ 131, 132).

In March 2020, Brown began suffering panic attacks, which she attributes to the ongoing issues at work (*Id.,* ¶ 127). On March 2, 2020. Brown advised Union President Sergeant Fields of her complaints (*Id.,* ¶ 134). On March 13, 2020, Brown was diagnosed

with anxiety due to stress (*Id.*, ¶ 128). Later that month, Brown notified IDOC that she lost her childcare due to Covid-19 and requested time off (*Id.*, ¶ 138).

In May 2020, Brown was advised that if she did not return to work, she would be terminated by IDOC (*Id.*, ¶ 139). On May 7, 2020, Brown resigned her employment, effective June 1, 2020 (*Id.*, ¶ 140).

## PROCEDURAL HISTORY

On March 8, 2022, Brown filed this action (Doc. 1). On June 13, 2022, defendants filed a motion to dismiss along with supporting memorandum of law (Docs. 15, 16). On June 14, 2022, Brown was granted leave to amend her complaint (Doc. 17), and on June 27, 2022, the first amended complaint was filed (Doc. 18).

In the amended complaint, Brown generally alleged sexual harassment so pervasive as to create a hostile work environment, retaliation in response to various complaints of discrimination, and pregnancy discrimination, all of which ultimately resulted in constructive discharge (*Id.*). Specifically, Brown asserted claims under Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e, *et. seq.*, the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), *et. seq.*, the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101, *et. seq.*, and the Fourteenth Amendment of the Constitution of the United States. Brown. The amended complaint was brought in the following nine counts: (1) Equal protection against all defendants under 42 U.S.C. § 1983; (2) Sex discrimination against all defendants in violation of Title VII; (3) Pregnancy discrimination against IDOC in violation of Title VII and the Pregnancy Discrimination Act; (4) Retaliation against IDOC in violation of Title VII; (5) Sex discrimination against all defendants in violation of the IHRA; (6) Pregnancy discrimination against

defendants Vitale, Rogers, and Elliott in violation of IHRA; (7) Retaliation against all defendants in violation of IHRA; (8) Disability discrimination against all defendants in violation of IHRA; and, (9) Violations of Americans with Disabilities Act against IDOC (*Id.*). The amended complaint was very detailed and thorough, identifying numerous incidents to support Brown's claims (*Id.*).

On July 28, 2022, the pending motion to dismiss was filed pursuant to Rules 8, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 20). Within the supporting memorandum of law, defendants raise several arguments to support their motion (Doc. 21). First, defendants argue that Count I, which is brought under 42 U.S.C. § 1983, should be dismissed because neither the IDOC nor the defendants (Vitale, Rodgers, and Elliot) in their official capacities are "persons" subject to suit under Section 1983. (*Id.*) Second, defendants contend that Brown's IHRA claims brought in Counts V, VI, VII, and VIII are barred by the Eleventh Amendment. (*Id.*) Third, defendants assert that the complaint should be dismissed because it violates Rule 8's "short and plain statement" requirement. (*Id.*).

On August 29, 2022, Brown filed her response to defendants' motion to dismiss and rebutted each of the arguments (Doc. 23). In her response, Brown claimed to have alleged sufficient facts to plausibly support her claims and emphasized that this case was at the pleading stage (*Id.*). With respect to the specific arguments raised by defendants, Brown countered that her § 1983 Equal Protection claim against IDOC was not barred by the Eleventh Amendment, that Counts V through VIII alleging violations of the IHRA were not barred by sovereign immunity, and that the amended complaint complies with Rule 8 of the Federal Rules of Civil Procedure (*Id.*)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555–56; *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir.2011).

Pursuant to Rule 12(b)(1), the court must dismiss a complaint if it lacks subject-matter jurisdiction over a case. To survive a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction over its claims. *United Phosphorous, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir.2003) (*en banc*). The court takes the allegations in the complaint as true, viewing all facts and any reasonable inferences in the light most favorable to the plaintiff. *See, e.g., Scott Air Force Base Props. v. Cnty. of St. Clair, Ill.,* 548 F.3d 516, 519 (7th Cir.2008). The

standard for a Rule 12(b)(1) motion to dismiss differs from that governing a Rule 12(b)(6) motion only in that the court " 'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.' " *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir.2009) (quoting *Even v. Astrue,* 536 F.3d 651, 656–57 (7th Cir.2008) (additional citations omitted)).

## ARGUMENT

### I. Count I

#### A. Law

Defendants claim that Count I of the first amended complaint, *i.e.* Brown's §1983 Equal Protection claim, is barred by the Eleventh Amendment (Doc. 21). In general, a state is immune from suits brought by individuals in federal court. *Ameritech Corp. v. McCann,* 297 F.3d 582, 585 (7t Cir. 2002). Section 1983 is entitled, "Civil action for deprivation of rights", and states in pertinent part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …". 42 U.S.C. § 1983.

In other words, Section 1983 authorizes suits against a "person" who acts under color of state law and deprives another person of his or her rights. 42 U.S.C. § 1983.

#### B. Analysis

In the case caption, Brown names IDOC along with SWICC staff, Elliott, Vitale, and Rodgers, both individually and in their official capacities, as parties (Doc. 18). She

also identifies Count I of the Amended Complaint as being brought pursuant to 42 U.S.C. § 1983; Equal Protection Against all Defendants (Doc. 18, p. 17). In the conclusion to the amended complaint, Brown seeks monetary relief and injunctive relief in the form of reinstatement (*Id.,* ¶250).

The Supreme Court has held that neither a state, its agencies nor its officials are suable "persons" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (see also *Lapides v. Board of Regents,* 535 U.S. 613, 617 (2002); *Carroll v. DeTella,* 255 F.3d 470, 471 (7th Cir.2001). Consequently, neither IDOC nor Vitale, Rodgers and Elliott in their official capacities, are "persons" subject to suit for monetary damages under Section 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). Furthermore, a state agency such as IDOC cannot be sued for prospective injunctive relief in federal court. *Quick v. Ill. Dep't of Fin. & Prof'l Regulation,* 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020). Consequently, while Count I against IDOC is dismissed in its entirety, the inquiry does not yet end with respect to the injunctive relief claims sought against Vitale, Rodgers, and Elliott in their official capacities.

There is a limited exception that allows for parties to sue state officials in their official capacity for equitable relief that is prospective in nature. *Ex Parte Young,* 209 U.S. 123 (1908). As hereinbefore demonstrated, Brown seeks reinstatement, which has been allowed and deemed permissible. *See Kashani v. Purdue Univ.,* 813 F.2d 843, 848 (7th Cir.1987); *Doe v. Bd. of Trs. of the Univ. of Ill.,* 429 F.Supp.2d 930, 941 (N.D.Ill.2006) ("when an individual's termination or dismissal directly violates a federal constitutional or statutory guarantee, he may maintain a suit for

reinstatement"). Indeed, claims for injunctive relief under § 1983 against the individual defendants in their official capacities survive because "official capacity actions for injunctive relief are not treated as actions against the State." *Ex parte Young,* 209 U.S. 123, 159–160 (1908); *Kentucky v. Graham,* 473 U.S. 159 (1985).

Finally, this Court must address whether Brown has stated a plausible claim under Section 1983 against Vitale, Rodgers, and Elliott, in their individual capacities. A § 1983 suit against an individual state officer in his personal capacity is not subject to the state sovereign immunity bar. *See Thomas v. Illinois,* 697 F.3d 612, 613 (7th Cir. 2012).

In order to succeed on an individual capacity claim against a state actor under § 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation. *Palmer v. Marion Cnty.,* 327 F.3d 588, 594 (7th Cir. 2003). Agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims. *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Therefore, supervisors are held individually liable for violating the constitution only where they "kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir.2010) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988)); *see also Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982) ("An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."). Additionally, "a senior jail official who was not personally involved in the acts

or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail." *Warren ex rel. Warren v. Dart,* No. 09 C 3512, 2010 WL 4883923, at *6 (N.D.Ill. Nov. 24, 2010) (citing *Antonelli v. Sheahan,* 81 F.3d 1422, 1428–29 (7th Cir.1996)).

This is the pleading stage, not the proving stage. At this time and without the benefit of a fully developed evidentiary record, the Court is not tasked with determining whether Brown will prevail. IDOC is dismissed from Count I, but Brown may proceed against Vitale, Rodgers, and Elliott, in their official capacity, with respect to prospective relief, and Brown may also proceed against Vitale, Rodgers, and Elliott, in their individual capacity, with respect to both prospective relief and monetary damages.

## II. Counts V through VIII under the Illinois Human Rights Act (IHRA)

### A. Law

Defendants next contend that Counts V through VIII are barred by the Eleventh Amendment under Sovereign Immunity (Doc. 21, p. 6). Specifically, defendants argue that Congress has not abrogated the state's immunity, nor has IDOC waived its immunity or consented to suit by Brown in federal court (*Id.*). Brown filed a response in opposition to the motion to dismiss, acknowledging that the State Lawsuit Immunity Act "may" immunize the IDOC from claims under the IHRA but arguing that the Eleventh Amendment only immunizes the IDOC from claims for money damages, not claims for injunctive relief (Doc. 23).

The parties' arguments pertain to immunity under both the Eleventh Amendment and the Illinois State Lawsuit Immunity Act (*see* Docs. 21, 23). Before the

Court can consider the applicability of the Eleventh Amendment, it must determine whether the State Lawsuit Immunity Act would allow IHRA claims in any form against the IDOC to proceed. *Richman v. Sheahan,* 270 F.3d 430, 441 (7th Cir. 2001) (state sovereign rules apply to state law claims brought in federal court).

Under the State Lawsuit Immunity Act, "the State of Illinois shall not be made a defendant in any court," except as provided in certain state statutes. 745 ILCS 5/1, 5/1.5. The Illinois Human Rights Act is *not* one of those statutes mentioned as an exception. *Id.* Consequently, Brown's claims under the IHRA against the IDOC— Counts 5, 7, and 8—must be dismissed. *See Harris v. Illinois,* 753 F. Supp. 2d 734, 740– 41 (N.D. Ill. 2010) (dismissing IHRA claim against the Illinois Department of Corrections as barred by the State Lawsuit Immunity Act); *Coleman v. Illinois*, No. 19-CV-03789, 2020 WL 6717341, at *4 (N.D. Ill. Nov. 16, 2020) (same); *Cook v. Illinois Dep't Of Corr.*, No. 09-CV-0133-DRH, 2009 WL 2588871, at *1 (S.D. Ill. Aug. 20, 2009)

Notwithstanding the foregoing, Brown also asserts claims in Counts V through VIII against Vitale, Rodgers, and Elliott, in both their individual and official capacities (Doc. 18). This Court does not accept the argument that the claim for injunctive relief circumvents the IHRA. Under any scenario, any alleged acts under the IHRA are based upon State law, not federal law, and as such, are not allowable. Accordingly, Counts V through VIII are dismissed.

### III. Rule 8 Pleading Requirements

#### A. Law

Defendants last raise pleading concerns in their motion to dismiss (Doc. 21). A complaint must include a "short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement of brevity fosters two goals: it allows trial courts to speed a case to resolution and it allows a defendant to capably respond to the allegations in the complaint. *United States ex rel. Garst v. Lockheed–Martin Corp.,* 328 F.3d 374, 378 (7th Cir.2003).

In practice, a complaint violates Rule 8(a) when it fails to provide notice to a party of the claim or is "unintelligible." *Fidelity National Title Insurance Company of New York v. Intercounty National Title Insurance Company,* 412 F.3d 745, 749 (7th Cir.2005). While a minor amount of surplus material in a complaint is not enough to frustrate these goals and violate Rule 8, unnecessary length coupled with repetitiveness, needless complexity, and immaterial allegations can push a complaint past Rule 8's breaking point—in other words, it can make a "complaint unintelligible" by "scattering and concealing in a morass of irrelevancies the few allegations that matter." *Kadamovas v. Stevens,* 706 F.3d 843, 844 (7th Cir.2013).

### B. Analysis

Brown's amended complaint consists of 28 pages and 251 paragraphs (Doc. 18). Indeed, it was a lengthy document; however, the word "short" in Rule 8(a)(2) is a relative term. *Kadamovas,* 706 F.3d at 844. Brevity must be calibrated to the number of claims and also to their character, since some require more explanation than others to establish their plausibility—and the Supreme Court requires that a complaint establish the plausibility of its claims. *Kadamovas,* 706 F.3d at 844 *citing Ashcroft v. Iqbal,* 556 U.S. 544 (2008); *Bell Atlantic Corp. v. Twombly,* 550 U.S.544 (2007).

Similar to this case, *Kadamovas* was a 28 page complaint, which the appellate court held was not excessively long given the number of separate claims the plaintiff

was raising. *Id.* Indeed, "[p]rolixity is a bane of the legal profession but a poor ground for rejecting potentially meritorious claims." *Bennett v. Schmidt,* 153 F.3d 516, 517 (7th Cir.1998). As such, this Court declines to dismiss the amended complaint for failing to comply with Rule 8 of the Federal Rules of Civil Procedure.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss is **GRANTED** in part and **DENIED** in part. Defendants shall answer the complaint within 21 days, or by, **December 21, 2022**. The following breakdown will assist in that endeavor:

1. Count I – IDOC is dismissed and official capacity claim against Vitale, Rodgers, and Elliott is limited to injunctive relief;
2. Count II – No change;
3. Count III – No change;
4. Counts IV – No change;
5. Counts V-VIII – Dismissed; and,
6. Count IX – No change.

**IT IS SO ORDERED.**

**DATED: November 30, 2022**

*s/ Stephen P. McGlynn*
STEPHEN P. McGLYNN
U.S. **District Judge**